S. LANE TUCKER
United States Attorney

JAMES KLUGMAN
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Email: james.klugman@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | |
| vs. | No. 3:21-cr-00114-SLG-MMS |
| LUKE EDWARD FOSTER, | |
| Defendant. | |

## SENTENCING MEMORANDUM

Defendant Luke Edward Foster committed two acts of hate-motivated property damage, as well as a serious narcotics trafficking offense. The United States recommends imposition of the following composite sentence:

**INCARCERATION** ...................................................................................**18 MONTHS**
**SUPERVISED RELEASE** ............................................................................**3 YEARS**
**SPECIAL ASSESSMENT**................................................................................**$200**
**RESTITUTION** ............................................................................................................
**FINE**............................................................................**NONE RECOMMENDED**

Such a term of imprisonment is sufficient, but not greater than necessary, to satisfy the

relevant stator sentencing criteria. Because a time-served sentence would fail to achieve those objectives, the Court should decline Foster's invitation to impose one.

**FACTS**

**1. Foster engages in a spree of hate-motivated property crime**

Police officers in Minneapolis murdered George Floyd on May 25, 2020. On the anniversary of his death, stickers with a swastika and the text "WE ARE EVERYWHERE" were placed at eight locations around Anchorage.



The eight target sites included the Alaska Jewish Museum, the Planned Parenthood Clinic on Lake Otis Parkway, Mad Myrna's (a bar and restaurant that describes itself as the "premier LGBTQ+ nightclub and entertainment venue in Anchorage, Alaska"), two sites on the University of Alaska Anchorage campus, a First National Bank on Piper Street, an electrical box on Dimond Boulevard and the Old Seward Highway, and a vehicle belonging to a woman playing softball at Lyn Ary Park.

Unsurprisingly, Foster's crimes attracted significant public attention in the Anchorage area. See, e.g., Mark Thiessen, *Man Seen on Security Camera Placing Swastika*

*Stickers on Jewish Museum in Anchorage*, Associated Press, May 27, 2021, available at https://perma.cc/S9EB-QL8V; Lex Treinen, *Swastika Sticker Found at Anchorage Gay Bar, Jewish Museum, police say*, Alaska Public Media May 27, 2021, available at https://perma.cc/BP5B-H965. Less surprising still, Foster succeeded in terrorizing his victims and other associated with the properties he chose to target, with the Jewish community in particular spending significant resources on additional security measures.

On September 14, 2021, Foster again targeted the Jewish community for additional vandalism, using the same swastika sticker, and this time carving a swastika into the surface of the door. (The Jewish High Holy Day of Yom Kippur began at sundown on September 15.)

**2. Foster uses Instragram to traffic controlled substances, and maintains a collection of weapons to protect them from law enforcement**

Over the same time period, Foster maintained and operated an Instagram social media account with the username "FrostyFungi". Although the account contained the unconvincing disclaimer "NOTHING FOR SALE", Foster in fact used it to identify customers interested in buying psilocybin mushrooms from him, or in retaining his services to learn how to produce their own. (Psilocybin is a Schedule I controlled substance under the Controlled Substances Act, meaning that it is been determined to have a high potential for abuse, no currently accepted medical use in treatment in the United States, and a lack of accepted safety for use under medical supervision. 21 U.S.C. § 812(b)(1).)

In order to facilitate his trafficking, Foster provided his customers with a clearly-labeled menu of goods and service, and the accompanying prices:

**FROSTYFUNGI**

MENU AND OPTIONS

**PRODUCTS**

| | |
|---|---|
| $20 | Microdose 5 pack |
| $50 | Microdose 15 pack |
| $60 | Frosty Bar 3.5 g |
| $10 | Spore Swab |

**SERVICES**

| | |
|---|---|
| $150 | 1Hr, 1v1 Video Call |
| $420 | 3Hr Package 1v1 |
| $500 | 1month pkg - 4 calls |

**SETUP-ESTIMATE**

| | |
|---|---|
| $500-1k | Small (ex. closet) |
| $1k-2k | Med. (ex. bedroom) |
| $3k-? | Large (ex. garage) |

**OTHER**

| | |
|---|---|
| $100 (5g) | Custom Tea Blend |
| $15 | 1g Mushrooms |
| $50 | 3.5g Mushrooms |
| $360 | 1oz Mushrooms |

Video calls will be situationally dealt with and must be paid for ahead of time. Estimates and conversation is free. Please direct any questions or concerns to the DM's Strain information provided with every purchase.

An undercover agent made contact with Foster via the FrostyFungi account, and the two arranged a meeting in a Walmart parking lot in Anchorage. Foster was carrying a pistol during this meeting.

The agent continued to communicate with Foster after this contact, and the two met a second time. On this occasion, Foster sold the agent "microdose pills" and several grams of whole mushrooms. Foster also described producing the psilocybin in his apartment, and also discussed his firearms collection. He described spending thousands of dollars on

firearms and ammunition, and express an interest in making 3D-printed guns, as well as homemade silencer. Foster clarified that he was aware of the illegality of his psilocybin production, and did not "want to get … a knock at three a.m. with twelve guys in fucking riot gear."

Agents executed a search warrant on Foster's apartment later that month. In addition to the mushrooms and associated production material, they recovered multiple firearms, thousands of rounds of ammunition, several thousand dollars in cash, and Nazi-inspired imagery, including a box of the swastika stickers and a swastika flag.

**GUIDELINES CALCULATION**

The government agrees with the Foster that the presentence report correctly calculates the Guidelines range as **12-18 months**. Because the defense's arguments as to the "primary guideline" relate to the § 3553(a) factors, not the Guidelines themselves, the government's response appears in the following section.

**STATUTORY CRITERIA AND RECOMMENDED SENTENCE**

**3. Nature and circumstances of the offense**

Over the same period of time, Foster committed two serious offenses that significantly harmed and endangered the public.

By anonymously targeting multiple victims from multiple parts of the community with his hate-based crime, Foster's conduct sowed fear and distrust far beyond the physical damage he caused. By attacking vulnerable members of the community, Foster struck at the cohesive community that gives Anchorage its strength. And by returning months to target the Jewish community a second time, Foster sought to ensure that his victims would

continue to feel unsafe on their own religious property.

At the same time, Foster was not only responsible for trafficking dangerous drugs, but in compounding the risk to the public generally and law enforcement in particular by illegally* maintaining a collection of firearms with expressed intent to use them. '

While factually distinct, Foster's crimes have one thing in common: neither was committed on the spur of the moment or in the heat of passion. Both were deliberately chosen, undertaken with calculation and planning, and committed willfully, with full knowledge of the illegality involved. For these reasons, a sentence at the high end of the Guidelines range is appropriate.

**4. History and characteristics of the defendant**

Foster is a young man with minimal prior criminal history and a record of good performance on pretrial release in this case. Those are positive factors that speak well for his potential for rehabilitation, particularly after the mandatory term of supervised release. However, the extended and calculated nature of the criminal conduct here does undercut the significance of this factor to an extent.

**5. The seriousness of the offense and just punishment**

Foster's offenses are both significant. As noted above, his acts of vandalism caused significant harm to people across the city, and his drug trafficking offense is aggravated by the close nexus to firearms. A sentence at the high end of the Guidelines range is appropriate and just, while the time-served sentence Foster has requested would

---

* As an admitted user of controlled substances, Foster was prohibited from possessing firearms. 18 U.S.C. § 922(g)(3).

inadequately reflect the important community interests in seeing serious offenders justly punished.

**6. Adequate deterrence**

A meangingful prison term, and a period of supervised release, is appropriate to deter Foster. It also worth noting that this is an unusual case where general deterrence is of particular value. These incidents have attracted attention in Alaska and beyond. The same Nazi-inspired internet communities that inspired Foster to commit his crimes will be watching even as they contemplate similar hate-based crimes in the future. A sentence at the high end of the Guidelines range sends and appropriate message that doing so is a losing proposition.

**7. Avoidance of unwarranted disparities**

Foster argues that this factor weighs against a term of imprisonment within the Guidelines range, because most defendants whose "primary guidelines was [U.S.S.G. ]§2H1.1" received much lower sentences.

But Congress's direction is for district courts to avoid "*unwarranted* sentence disparities among defendants with similar records *who have been found guilty of similar conduct*". 18 U.S.C. § 3553(a)(6) (emphasis added). Because it so few defendants (barely four per year) are in this dataset, it is not at all fair to infer that the mere fact that someone was sentence under §2H1.1 means the person committed crimes that were fundamentally similar to Foster's. Indeed, common sense would suggest that most defendants convicted of civil rights violations have *not* also been convicted of firearms-related felony drug trafficking. In the circumstances of this case, Foster has simply given no reason to think

the JSIN statistics are an effective measure of similarity, and any disparity is amply warranted by Foster's additional crimes.

**8. Sentencing recommendation**

For the reasons set out above, the government recommends that Foster be sentenced to 18 months incarceration, followed by the mandatory 3 year term of supervised release, and the required $200 surcharge.

RESPECTFULLY SUBMITTED July 18, 2023 at Anchorage, Alaska.

S. LANE TUCKER
United States Attorney

/s James Klugman
JAMES KLUGMAN
Assistant United States Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2023 a true and correct copy of the foregoing was served electronically on all counsel of record.

/s James Klugman